## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SARAH SIMS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| ADS ALLIANCE DATA SYSTEMS, INC. ) | |
| ) | |
| <u>Serve Registered Agent at</u>: ) | JURY TRIAL DEMANDED |
| The Corporation Company, Inc. ) | |
| 112 SW 7th Street Suite 3C, ) | |
| Topeka, Kansas 66603 ) | |
| ) | |
| Defendant. ) | |

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff hereby designates the Federal Court in Kansas City, Kansas as the place of trial.

## **COMPLAINT**

COMES NOW Plaintiff, Sarah Sims ("Plaintiff"), by and through the undersigned counsel, and states and alleges the following against Defendant ADS Alliance Data Systems, Inc. ("**Defendant**").

## **NATURE OF THE CLAIM**

1. This action for legal and equitable relief arises under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA") and Title VII of the Civil Rights Act of 1964.

2. Plaintiff seeks all remedies from Defendant that are available to her under the ADA and Title VII, including compensatory and punitive damages, costs, reasonable attorneys' fees, and equitable relief the Court deems warranted.

## PARTIES

3. Plaintiff Sarah Sims is, and, at all times relevant to the allegations in this Complaint was, a resident and citizen of the State of Kansas.

4. At all times relevant herein, Plaintiff was employed by Defendant.

5. Upon information and belief, Defendant is a for-profit corporation registered under the laws of Delaware, which conducts business in the State of Kansas, including at the location where Plaintiff worked, 8035 Quivira Road, Lenexa, Kansas.

6. Upon information and belief, Defendant employs more than fifteen (15) persons within the State of Kansas and, at all relevant times herein, was an "employer" within the meaning of the ADA and Title VII.

7. Defendant is an entity, and is thus incapable of acting on its own behalf and therefore acts through agents. It is liable for the conduct of its agents, including but not limited to the individuals named herein, acting within the course and scope of their employment and/or agency, its own negligence, the acts of its employees and/or agents which it ratifies, injuries incurred by employees and/or agents' performance of its non-delegable duties, and acts its employees and/or agents take by virtue of their agency or employment with Defendant.

8. At all times mentioned herein, each of Defendant's employees referenced in this Complaint were the agents, servants, and employees of Defendant who were all acting within the course and scope of their employment and/or agency with Defendant.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the federal laws: the ADA and Title VII.

10. Jurisdiction is proper over Defendant because it transacted business in the State of

Kansas, and the discriminatory and wrongful acts alleged herein occurred in the State of Kansas.

11.     Venue is proper in this Court as the alleged acts, omissions and occurrences giving rise to the claims asserted occurred in Overland Park, Kansas, at Defendant's office location at 8035 Quivira Road, Lenexa, Kansas.

## CONDITIONS PRECEDENT

12.     **On or about January 31, 2020,** Plaintiff submitted a Charge of Discrimination ("Charge") regarding employment discrimination and retaliation to the Equal Employment Opportunity Commission ("EEOC"). The EEOC assigned No. 563-2020-01100 to the Charge. A true and correct copy of the Charge is attached hereto as **Exhibit A** and incorporated herein by reference.

13.     **On or about July 20, 2020**, the EEOC issued a Notice of Right to Sue concerning Charge No. 563-2020-01100.  A true and accurate copy of the Right-to-Sue Notice is attached hereto as **Exhibit B** and is incorporated herein by reference.

14.     This action has been timely filed with this Court, and Plaintiff has met all conditions precedent to filing this action.

## FACTUAL ALLEGATIONS

15.     Plaintiff became employed by Defendant in approximately December 2018 as a Customer Care Advocate.

16.     As a Customer Care Advocate, Plaintiff's job duties included providing service to customers by fielding phone calls. Plaintiff's communications with customers included answering their questions and addressing concerns. In the event the issues were beyond Plaintiff's knowledge base, or if the customer requested a transfer, Plaintiff was to escalate the call to an appropriate lead.

17. In her position, Plaintiff was to meet certain performance goals which were measured in metrics. More specifically, Plaintiff was measured/evaluated on her customer interactions and fielding of calls in three categories using metrics of Adherence, Availability and Escalated Transfer.

18. In March 2019, Plaintiff was transferred to a new team, and her supervisor became Zach Webb. At the time of Plaintiff's transfer, she informed Mr. Webb of her disabilities of diabetes and anxiety. More specifically, Plaintiff informed Mr. Webb that there may be times when she might need frequent restroom breaks or need to regulate her blood sugar levels, as a result of her diabetes.

19. After learning of Plaintiff's disabilities, Mr. Webb made no effort to engage in a productive and interactive dialogue with Plaintiff to discuss her disabilities and identify reasonable accommodations for her disabilities.

20. As a result of the lack of accommodations, lack of effort to engage in the interactive process, and discrimination Plaintiff was experiencing from Mr. Webb, Plaintiff suffered severe stress and anxiety which led to her taking short-term disability leave.

21. Plaintiff was on leave from approximately mid-August 2019 until September 9, 2019.

22. After Plaintiff returned to work, Mr. Webb issued a write up to her, for failing to meet her metrics in the month of August. The write up was unjustified and inappropriate as the time period referenced and included in the metrics rating encompassed a portion of Plaintiff's short-term disability leave.

23. Within a month or so of her return to work, Plaintiff made her first report of discrimination as it relates to her disability status.

24. More specifically, Plaintiff reported to John Fink, Human Resources officer, that she was experiencing discrimination by Mr. Webb, on the basis of her disability status. Plaintiff further reported that Mr. Webb had issued written discipline to her for failing to meet her metrics during the time she was on approved short-term disability leave.

25. At the time Plaintiff made the reports of disability discrimination to Mr. Fink, she also requested to be transferred to another team in an effort to prevent further discrimination by Mr. Webb.

26. Mr. Fink refused to transfer Plaintiff to another team and took no action to remedy or prevent the disability discrimination Plaintiff was experiencing.

27. Shortly after Plaintiff's meeting with HR, to report the disability discrimination she was experiencing by Mr. Webb, Plaintiff received an email from Mr. Webb reprimanding her for having her iPad on her desk. In the email, Mr. Webb referenced alleged prior counselings given to Plaintiff on this issue.

28. In reality, Plaintiff had been told by Mr. Webb that she was permitted to have her iPad on her desk as long as it did not interfere with the performance of her duties and responsibilities.

29. Plaintiff believed the reprimand by Mr. Webb to be not only discriminatory but also retaliatory. Plaintiff forwarded the email to Mr. Fink letting him know that she believed Mr. Webb was not only engaging in continued discrimination but was also retaliating against her for her complaints of discrimination. Nothing was done in response.

30. On or about October 28, 2019, Plaintiff made another complaint of disability discrimination and retaliation to Mr. Fink. During the meeting, Plaintiff also informed Mr. Fink that Mr. Webb treated female employees less favorably than male employees, and that she believed

Mr. Webb was discriminating against Plaintiff and other female employees based on their sex/gender, at least in part.

31. In the meeting that occurred on or about October 28, 2019, Plaintiff further informed Mr. Fink that female employees did not like working for Mr. Webb. Again, no action was taken in an effort to remedy the discrimination or retaliation Plaintiff was experiencing.

32. Plaintiff made yet another complaint on or about November 8, 2019. Plaintiff met with Mr. Fink and Ms. Meireis, Mr. Webb's supervisor. In the meeting Plaintiff reiterated the disability discrimination and retaliation she had experienced to date. Plaintiff also reiterated that Mr. Webb treated female employees less favorably than male employees.

33. Plaintiff encouraged Mr. Fink and Ms. Meireis to meet with other female employees supervised by Mr. Webb, as the employees would corroborate the discriminatory treatment being reported by Plaintiff.

34. Plaintiff again requested to be moved to a different team. Plaintiff's request was denied and Plaintiff was told by Ms. Meireis that she did not believe Mr. Webb was retaliating against Plaintiff.

35. The gender discrimination Plaintiff experienced and witnessed included, but was not limited to:

    a) female employees being disciplined by Mr. Webb multiple times for the same alleged infraction while male employees would receive one reprimand, if reprimanded at all;

    b) female employees would be harassed and verbally criticized for months following what Mr. Webb deemed to be an alleged "bad call" while male employees were not subjected to this same ridicule and criticism;

6

  c) female employees were called to Mr. Webb's desk and berated to the point of tears, while male employees did not experience such treatment;

  d) female employees were berated in front of other employees in an effort by Mr. Webb to embarrass the female employee, while males were not subjected to such treatment.

36. Based on information and belief, Defendant received complaints about Mr. Webb's discriminatory treatment of females prior to Plaintiff's complaints.

37. On or about November 14, 2019, following Plaintiff's multiple complaints of discrimination and retaliation, Mr. Webb issued another written discipline to Plaintiff regarding her metrics for the months of August, September and October 2019.

38. Plaintiff was on short-term disability leave for a portion of the time referenced and encompassed in the written discipline.

39. At the time Mr. Webb issued the November 14, 2019 discipline to Plaintiff, he also claimed to have received two "customer complaint" calls about Plaintiff.

40. Plaintiff and Webb listened to the customer inquiry calls. Nothing occurred in the calls that Plaintiff believed might lead to a complaint.

41. Plaintiff accordingly asked to listen to the actual alleged "complaint calls" that Webb claimed to have received. Mr. Webb said "we just did."

42. Plaintiff responded that he had represented that he received alleged "customer complaint" calls.

43. Mr. Webb then contradicted himself and claimed that one of the alleged complaints was from a survey.

44. However, based on the company policies, a survey response is not deemed to be a

7

customer complaint.

45. Webb then stated that the other alleged complaint was either written or from the Better Business Bureau. However, he could provide no evidence of the alleged complaint.

46. Based on information and belief, Plaintiff has not received a customer complaint.

47. Based on information and belief, the November 14, 2019 write-up was discriminatory and retaliatory.

48. Thereafter, on or about January 9, 2020, Mr. Webb issued Plaintiff another write-up for alleged improper personal time usage during the month of November 2019.

49. On the date at issue, November 2, 2019, Plaintiff had experienced a hypoglycemic episode related to her diabetes disability, which required her to take personal time to address the issue. As a result, Plaintiff did not meet her metrics for the day.

50. Plaintiff sent Mr. Webb an email on the date of the occurrence, November 2, 2019, informing him of the hypoglycemic event that necessitated her time away from the phones and required use of personal time. At that time, Mr. Webb acknowledged the email and did not communicate any problem or issue with the circumstances.

51. Plaintiff expected that Mr. Webb would apply PTO to her time away from the phones, and adjust her metrics accordingly to account for the time she was unable to work due to her diabetic event. Rather, Webb issued Plaintiff the above-referenced discipline on January 9, 2020 for the November 2, 2019 diabetic episode.

52. Plaintiff had requested and continued to request that she be allowed extra time away from the phones when a diabetic episode would arise. Her requests for such an accommodation were ignored and Defendant made no effort to engage in the interactive process in an effort to identify and implement any reasonable accommodation.

53. Plaintiff resigned her employment on or about May 7, 2020 at least in part due to the discriminatory and retaliatory work environment to which she was subjected.

54. As a result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer emotional distress and past and future lost wages.

## COUNT I
## ADA/ADAAA – Discrimination
## (42 U.S.C. § 12101 *et seq.*)

55. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

56. The ADA prohibits discrimination against a person who has, is regarded as having, or has a record of a "disability," i.e., a physical or mental impairment that substantially limits one or more major life activities.

57. "Major life activities" as defined in the ADA include the operation of a major bodily function, including but not limited to the endocrine system. "Major life activities" also include activities such as caring for oneself, sleeping, concentrating, thinking, communicating, and working.

58. Plaintiff's diabetes constituted a physical impairment that substantially limited one or more of her major life activities, including but not limited to the function of her endocrine system and more specifically, the ability of the pancreas to regulate glucose levels and produce insulin.

59. Plaintiff's anxiety constituted a physical and/or mental impairment that substantially limited Plaintiff's ability to perform one or more major life activity including but not limited to sleeping, concentrating, thinking, and self-care.

60. Nevertheless, Plaintiff could perform the essential functions of her job with or

without reasonable accommodations.

63. Plaintiff requested reasonable accommodations for her disabilities, and/or the need for reasonable accommodations was obvious to Defendant.

62. Defendant engaged in conduct prohibited by the ADA, including but not limited to failing to engage in an interactive process to determine reasonable accommodations for Plaintiff, despite Plaintiff's requests for reasonable accommodations; failing and/or refusing to provide reasonable accommodations for Plaintiff's disabilities; issuing Plaintiff unwarranted write-ups; reprimanding Plaintiff without merit; denying Plaintiff's reasonable requests to transfer teams; and failing to address and remedy discriminatory treatment directed toward Plaintiff on the basis of her disability.

63. The conduct and actions by the above-described perpetrators, including but not limited to Mr. Webb, Mr. Fink, and Ms. Meireis, were motivated by Plaintiff's disability status and constitute discrimination based on disability.

64. Plaintiff suffered tangible adverse employment actions as a result of Defendant's conduct as referenced herein, including but not limited to a lack of reasonable accommodations, receiving unwarranted write-ups; being reprimanded without merit; and being denied the reasonable opportunity to transfer teams so that she would not continue to be subjected to Mr. Webb's discriminatory treatment.

65. The conduct of Defendant, described herein, would have detrimentally affected a reasonable person in Plaintiff's position.

66. Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

67. Defendant's treatment of Plaintiff was punitive in nature and was based upon

10

Plaintiff's status as a person who has disabilities protected under the ADA.

68. Supervisory and management-level employees knew or should have known of the discrimination, but failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop discrimination against Plaintiff based on her disabilities.

69. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in her favor and against Defendant on Count I of her Complaint; for a finding that she has been subjected to unlawful discrimination as prohibited by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or an award of front pay; for pre-judgment and post-judgment interest as provided by law; for her costs expended herein; reasonable attorneys' fees, as contemplated by 42 U.S.C. § 12205; and for such other and further relief as this Court deems just and proper.

## COUNT II
### ADA/ADAAA – Retaliation
### (42 U.S.C. § 12203)

70. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

71. The ADA prohibits retaliation against an individual who has opposed disability discrimination under the ADA.

72. Plaintiff engaged in protected activity by requesting reasonable accommodations and/or opposing discrimination based on her disabilities protected under the ADA.

11

73. Plaintiff's actions in requesting reasonable accommodations for her disability and exercising her right to return to work following short-term disability leave constituted protected activities under the ADA/ADAAA.

74. Plaintiff's several complaints of disability discrimination constituted protected activity under the ADA/ADAAA.

75. As a result of Plaintiff's protected activities, Defendant subjected Plaintiff to adverse employment actions as alleged herein, including but not limited to receiving unwarranted write-ups; being reprimanded without merit; and being denied the reasonable opportunity to transfer teams so that she would not continue to be subjected to Mr. Webb's discriminatory treatment.

76. Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

77. At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

78. Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

79. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in her favor and against Defendant on Count II of her Complaint; for a finding that she has been subjected to unlawful retaliation as prohibited by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or

an award of front pay; for pre-judgment and post-judgment interest, as provided by law; for her costs expended herein; reasonable attorneys' fees, as contemplated by 42 U.S.C. § 12205; and for such other and further relief as this Court deems just and proper.

### COUNT III
### Title VII Sex/Gender Discrimination
### (42 U.S.C. § 2000e *et seq.*)

80. Plaintiff incorporates by reference the allegations contained in every other paragraph as though fully set forth herein.

81. During the course and scope of Plaintiff's employment, Defendant's representatives, including but not limited to Mr. Webb, Mr. Fink, and Ms. Meireis while acting within the course and scope of their employment, engaged in a pattern and practice of intentional discrimination of Plaintiff based on her female sex/gender, in violation of Title VII.

82. The discrimination to which Plaintiff was subjected was sufficiently severe and pervasive that it had the purpose and effect of unreasonably interfering with the terms, conditions, and privileges of Plaintiff's employment.

83. Plaintiff suffered tangible adverse employment actions as a result of Defendant's conduct as referenced herein, including but not limited to receiving unwarranted write-ups and unwarranted reprimands; being berated by Webb; and being treated less favorably in general as compared to male employees supervised by Webb.

84. The conduct to which Plaintiff was subjected was based on Plaintiff's female sex/gender.

85. The conduct described herein would have offended a reasonable person of the same sex/gender in Plaintiff's position.

86. Management-level employees of Defendant, including but not limited to Mr. Webb,

Mr. Fink, and Ms. Meireis knew or should have known of the sex/gender discrimination described herein, and failed to implement effective and appropriate procedures to stop and remedy the sex/gender discrimination.

87. Plaintiff's sex/gender was a motivating or determining factor in the decision of Defendant's management-level employees, including but not limited to Mr. Webb, Mr. Fink, and Ms. Meireis, to engage in discriminatory behavior toward Plaintiff.

88. The discriminatory work environment to which Defendant subjected Plaintiff based on her female sex/gender, directly and proximately caused, and will continue to cause, Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

89. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

90. At all times referenced herein, the above-referenced perpetrators were agents, servants and employees of Defendant, and were at all times acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count III of her Complaint, for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. 2000 *et seq.*, for an award of compensatory and punitive damages, pre-judgment and post-judgment interest, as provided by law, for her costs expended, for reasonable attorneys' fees and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT IV
### Title VII – Retaliation
### 42 U.S.C. § 2000e et seq.

COMES NOW Plaintiff, and for Count IV of her Complaint against Defendant, alleges and states as follows:

91. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

92. Plaintiff complained to Defendant of the sex/gender discrimination to which ~~Defendant subjected~~ Plaintiff was subjected, as set forth in detail herein.

93. Plaintiff's complaints of sex/gender discrimination, and opposition to discriminatory treatment on the basis of sex/gender, constituted a legally protected activity under Title VII.

94. By reason of Plaintiff's complaints, Defendant retaliated against Plaintiff, in ways including but not limited to issuing Plaintiff unwarranted write-ups; reprimanding Plaintiff without merit; denying Plaintiff's reasonable requests to transfer teams; and failing to address and remedy discriminatory and retaliatory treatment directed toward Plaintiff on the basis of her sex/gender.

95. At all times mentioned herein, before and after, the above-mentioned individuals were agents, servants, and employees of Defendant and were at all times acting within the course and scope of their employment.

96. Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

97. At the time Defendant engaged in retaliatory acts directed at Plaintiff, Defendant knew that such retaliation was unlawful.

98. The actions and conduct set forth herein was outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

99. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages, including lost wages and emotional distress.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count IV of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C. §2000e *et seq.*; for an award of compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees and expert fees provided by 42 U.S.C. § 2000e 5k and for such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all counts of the Complaint.

Respectfully submitted,

HOLMAN SCHIAVONE, LLC

By: */s/ Kathleen E. Mannion*
Anne Schiavone, KS Bar #19669
Kathleen E. Mannion, KS Bar #25362
**Holman Schiavone, LLC**
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
(816) 283-8738 Telephone
(816) 283-8739 Facsimile
aschiavone@hslawllc.com
kmannion@hslawllc.com

*ATTORNEYS FOR PLAINTIFF*